UNITED STATES DISTRICT COURT **PRESS COPY**
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

JENNIFER JORGENSEN,

Plaintiff,

-against-

COUNTY OF SUFFOLK, SUFFOLK COUNTY POLICE
DEPARTMENT, DETECTIVE ROY BAILLARD , in is his
individual and official capacity, POLICE OFFICERS JOHN
DOE 1-10, in their official and individual capacities,
(those being the names of officers who were present and
committed wrongful acts and whose names are known by
the other Defendants), POLICE DETECTIVES JOHN
DOE 1-2, in their official and individual capacities,
(those being the names of officers who were present and
committed wrongful acts and whose names are known by
the other Defendants), SUFFOLK COUNTY OFFICE OF
THE DISTRICT ATTORNEY, DISTRICT ATTORNEY
THOMAS SPOTA, in is his individual and official capacity,
ASSISTANT DISTRICT ATTORNEY LAURA
NEWCOMBE, in is his individual and official capacity,

Defendants.

------------------------------------------------------------------------X

**COMPLAINT**

# CV11-2588

**JURY TRIAL DEMANDED**

**SPATT, J.**

**TOMLINSON, M.J.**

2011 MAY 27 PM 11:54

**PLAINTIFF**, JENNIFER JORGENSEN by and through his attorneys, the LAW OFFICES
OF FREDERICK K. BREWINGTON, as and for her complaint against Defendants, respectfully
states and alleges, upon information and belief, as follows:

## PRELIMINARY STATEMENT

1.       This is a civil action seeking injunctive relief, monetary relief, (including past and on
going economic loss, compensatory and punitive damages, disbursements, costs and fees for
violations of rights, brought pursuant to 42 U.S.C. §§ 1983, Fourth Fifth, Sixth and the Fourteenth
Amendments to the United States Constitution.

2.       This action is brought against the COUNTY OF SUFFOLK, SUFFOLK COUNTY

POLICE DEPARTMENT, DETECTIVE ROY BAILLARD , in is his individual and official capacity, POLICE OFFICERS JOHN DOE 1-10, in their official and individual capacities, (those being the names of officers who were present and committed wrongful acts and whose names are known by the other Defendants), POLICE DETECTIVES JOHN DOE 1-2, in their official and individual capacities, (those being the names of officers who were present and committed wrongful acts and whose names are known by the other Defendants), SUFFOLK COUNTY OFFICE OF THE DISTRICT ATTORNEY, DISTRICT ATTORNEY THOMAS SPOTA, in is his individual and official capacity, ASSISTANT DISTRICT ATTORNEY LAURA NEWCOMBE, in is her individual and official capacity, for committing acts under color of law and depriving Plaintiff of rights secured by the Constitution, the laws of the United States and the State of New York.

3.     Plaintiff alleges that Defendants negligently reported, falsely accused, harassed, improperly seized, falsely detained, and utilized inappropriate police powers on Plaintiff all in violation of her constitutional and civil rights.  Plaintiff alleges that Defendants COUNTY OF SUFFOLK, and SUFFOLK COUNTY POLICE DEPARTMENT were negligent in training, hiring, disciplining and supervising DETECTIVE BAILLARD and JOHN DOE  thus leading to the unjustified, false arrest, false imprisonment, falsely detained JENNIFER JORGENSEN. Plaintiff alleges that the seizure, use of force, and detention of Plaintiff was made in an attempt to justify the flagrantly improper and unjustified conduct of Defendants. Defendants, without probable cause, justification or any reason except an intent to deprive Plaintiff of her rights, unlawfully ceased Plaintiff, used unjustified governmental authority and power upon Plaintiff, and detained Plaintiff after coming upon her at her home, located at 27 Brightwaters Drive, Sound Beach, New York. The wrongful conduct of Defendants had the tacit authorization of the COUNTY OF SUFFOLK, and

2

SUFFOLK COUNTY POLICE DEPARTMENT and the SUFFOLK COUNTY DISTRICT

ATTORNEYS OFFICE. Said use of unjustified authority and power on Plaintiff deprived her of her

civil and constitutional rights.

4.      The Defendants also conspired to condone and encourage such civil and constitutional

rights violations by failing to properly investigate, punish and prevent the actions of the Defendant

police officers against the Plaintiff.

5.      Such acts caused the Plaintiff JENNIFER JORGENSEN severe damages and injuries

including but not limited to personal injuries to her body and mind, unnecessary and unwanted pain

and suffering, violation of civil rights, permanent damage to reputation and standing in the

community, loss of comfort, support, extreme mental and emotional harm and stress, impairment

of earning power, and other injuries not yet fully ascertained.

### JURISDICTION AND VENUE

6.      Jurisdiction of this Court is invoked under 28 U.S.C. §1331, 28 U.S.C. and §1343(3)

7.      Venue herein is proper under 28 U.S.C. § 1391(b); the cause of action arose in the

Eastern District of New York, and all of the parties reside or are located in Suffolk County.

### PARTIES

8.      Plaintiff, JENNIFER JORGENSEN, is female, a citizen of the United States. MS.

JORGENSEN's resides in the County of Suffolk, City of Sound Beach, State of New York.

9.      Defendant SUFFOLK COUNTY (hereinafter "COUNTY") is a municipal

corporation, duly organized and existing under and by virtue of the laws of New York State.

10.      Defendant SUFFOLK COUNTY POLICE DEPARTMENT (hereinafter "POLICE

DEPARTMENT") is an agency of SUFFOLK COUNTY.

11.    During all times herein mentioned the defendants DETECTIVE BAILLARD (hereinafter "BAILLARD") and POLICE OFFICERS JOHN DOE 1-10 (hereinafter "OFFICERS"), all of whose names are known to the COUNTY and the POLICE DEPARTMENT, were police officers in the POLICE DEPARTMENT acting in their official capacities and were employed by the COUNTY acting under the direction of Defendants COUNTY and the POLICE DEPARTMENT, and are sued herein individually and in their official capacities.

12.    During all times herein mentioned the defendants POLICE DETECTIVES JOHN DOE 1-2, in their official and individual capacities, (hereinafter "detectives") all of whose names are known to the COUNTY and the POLICE DEPARTMENT, were police officers in the POLICE DEPARTMENT acting in their official capacities and were employed by the COUNTY acting under the direction of Defendants COUNTY and the POLICE DEPARTMENT, and are sued herein individually and in their official capacities.

13.    During all times herein mentioned the defendants SUFFOLK COUNTY OFFICE OF THE DISTRICT ATTORNEY (hereinafter "DISTRICT ATTORNEYS OFFICE") is an agency of SUFFOLK COUNTY.

14.    During all times herein mentioned the defendants, DISTRICT ATTORNEY THOMAS SPOTA, in is his individual and official capacity, ASSISTANT DISTRICT ATTORNEY LAURA NEWCOMBE, in is her individual and official capacity were prosecutors in the DISTRICT ATTORNEYS OFFICE acting in their official capacities and were employed by the COUNTY acting under the direction of Defendants COUNTY and are sued herein individually and in their official capacities.

15.    During all times mentioned in this complaint, the Defendants were acting under color

4

of law, to wit, under color of constitution, statutes, ordinances, laws, rules, regulations, policies, customs and usages of the State of New York and/or SUFFOLK COUNTY.

16.     During all times mentioned in this complaint the Defendants and each of them, separately and in concert, engaged in acts or omissions which constituted deprivation of the constitutional rights, privileges and immunities of the Plaintiff and while these acts were carried out under color of law, they had no justification or excuse in law and were instead gratuitous, illegal, improper and unrelated to any activity in which law enforcement officers may appropriately and legally engage in the course of protecting persons and property or ensuring civil order.

17.     Each of the Defendants at all times relevant to this action had the power and the duty to restrain the other Defendants and prevent them from violating the law and the rights of the plaintiff but each of the Defendants failed and refused to perform that duty, failed and refused to restrain the other defendants and thereby became a party to the unnecessary subjection of harm and denial of basic rights of the plaintiff.

## FACTUAL ALLEGATIONS

18.     On or about May 30, 2008, Plaintiff was in a near fatal car accident. At the time of the accident, Plaintiff was also eight months pregnant.

19.     As a result of this accident, two passengers, Robert and Mary Kelly, in the other vehicle died and Plaintiff was severely injured.

20.     Upon information and belief, Robert Kelly is a retired police officer.

21.      Defendant BAILLARD the lead detective, arrived at Stony Brook Hospital with a bag of prescription medications that was found in Plaintiff's car, at the accident scene.

22.     Defendant BAILLARD displayed the bag of prescription medications to members of

5

Plaintiff's family and asking them questions about where they came from.

23.     The medications that *were* in Plaintiff's car, at the time of the accident, were all prescribed to Plaintiff and had been collected for transport due to Plaintiff change of residence.

24.     On the day of the accident Plaintiff was in the process of transporting the medications, along with numerous other personal items, to her new apartment in Ridge, New York. Earlier that day, Plaintiff had removed the items from her apartment, at her mother's home in Miller Place and placed them in the trunk of her vehicle.

25.     After packing her vehicle, Plaintiff left her mother's house and drove to the Michael's Craft Store, located in a shopping center at Route 25A and Rocky Point Yaphank Road, Ridge, New York. Plaintiff spent approximately one hour in the Michael's Craft Store, where she purchased several items and made some returns.

26.     While in the store, Plaintiff had contact with several of the employees, namely Debbie DeRocher, Virginia Gordon and Destiny Martin.

27.     After leaving Michael's, Plaintiff placed her purchases in the trunk of her 2008 Nissan Sentra. Ms. Jorgensen then walked to Sonny's Card Store and purchased lottery tickets. Thereafter, she walked to Pompeii's Pizzeria. All these stores are located in the same shopping center as the Michael's Craft Store.

28.     While at the pizzeria, Ms. Jorgensen had a conversation with the manager, Robert Canavan.

29.     After leaving the pizzeria, Plaintiff walked back to her car. She then left the shopping center and traveled south on Rocky Point Yaphank Road, en-route to 38 Ridge Road., Ridge, New York.

30.    It was shortly before 3 pm when Ms. Jorgensen left the shopping center. She proceeded in a legal fashion. When Plaintiff reached Whiskey Road, she made a left turn and proceed east on Whiskey Road towards Ridge. Plaintiff called her father-in-law on her car equipped bluetooth and told him she was on her way and would be at his house in a few minutes.

31.    That call is the last thing Plaintiff remembers until she woke up in the recovery room at Stony Brook University Hospital.

32.    Plaintiff was air lifted to Stony Brook University Hospital via police helicopter. Shortly after arriving to the hospital, Plaintiff was operated on by the hospital's trauma unit.

33.    Plaintiff was in surgery for several hours for extensive and life threatening injuries. The medical team had to perform an emergency caesarean section to deliver Plaintiff's baby. Ms. Jorgensen's daughter, Ashley Jorgensen, died several days later.

34.    Upon entering the hospital, shortly after four o'clock in the afternoon, on May 30, 2008, a catheter was installed in Plaintiff's urethra. A toxicology test was performed on the urine sample. The urine sample was found to be negative for ethanol or any drugs, other than what was administered to Plaintiff by the hospital.

35.    Late in the evening of May 30, 2008, Defendant BAILLARD, the investigating Suffolk County Police Detective, obtained a search warrant to search Plaintiff's vehicle. Upon information and belief, the search warrant application was for medication only.

36.    Upon information and belied the search warrant application did not include any mention of alcohol. Furthermore, the initial reports to the press indicated the use of alcohol by any of the drivers was not a factor in the accident.

37.    Late on May 30, 2008, while Ms. Jorgensen was in the recovery room, a police

detective and a physician's assistant arrived at the hospital with a search warrant to obtain a blood sample from Plaintiff.

38.     Plaintiff's blood was taken with a Driving While Intoxicated ("DWI") kit. Upon information and belief, the toxicology test performed from this blood sample was found to be negative for drugs or alcohol.

39.     Although, Defendant POLICE DEPARTMENT was placed on notice by Plaintiff's counsel at the time,  that Plaintiff would make her available for questioning as long as it was conducted in his presence, at no time after the accident did Defendants POLICE DEPARTMENT or Defendants SUFFOLK COUNTY DISTRICT ATTORNEYS OFFICE make any request to question Plaintiff.

40.     The only interviews conducted by Defendants at the hospital's emergency room, when Defendant BAILLARD spoke briefly to Richard Kaiser Jr., plaintiff's fiancee and his father Richard Kaiser. Sr.

41.     Upon information and belief, Defendant BAILLARD took cursory statements from both gentlemen which contained very little information.

42.     Not satisfied with the urine and court ordered blood results, upon information and belief, a warrant application was made and issued to obtain a new blood sample from Plaintiff in the emergency room at Stony Brook University Hospital. However, the only blood that could be supplied was two milliliters of blood from a red cap blood tube. Upon information and belief, red cap tubes do not contain blood preservatives.

43.     The practice of not using blood preservatives in the red cap tubes from which Defendants obtained a sample of Plaintiff's blood is a fact that was known to, or should have been

8

known by Defendants.

44.    Plaintiff's blood was not tested by Defendants for twenty-six (26) days. Later during Plaintiff's trial, when a representative from the crime lab was asked why the delay in conducting the tests, the representative testified that they awaited until they recieved instruction from Defendants DISTRICT ATTORNEYS OFFICE.

45.    Shortly after the accident, Child Protective Services ("CPS")became involved, citing Plaintiff's newborn daughter's hospital toxicology report showing an alleged weak positive for ethanol. This is in spite of the fact that, the sample obtained from Plaintiff's daughter was taken 40 hours after she was born and when her blood had been transfused.

46.    Representatives from CPS visited Plaintiff at the hospital and questioned her.

47.    After being released from the hospital, CPS continuously visited Plaintiff at her home and questioned her. This continued while Defendant SUFFOLK COUNTY POLICE DEPARTMENT and SUFFOLK COUNTY DISTRICT ATTORNEY'S OFFICE were still conducting their investigation.

48.    Upon information and belief, although CPS was prepared to close their investigation with a finding of "charges unfounded" they were coerced by Defendant SUFFOLK COUNTY DISTRICT ATTORNEYS OFFICE into believing that Defendants had found evidence of wrongdoing by Plaintiff.

49.    Soon thereafter, CPS brought an action against Plaintiff in family court for the removal of her son, Daniel. Plaintiff was accused of being a negligent parent because her deceased daughter allegedly tested positive for drugs and alcohol. Plaintiff was not provided with any documents proving this.

9

50.     Plaintiff voluntarily subjected herself to various drug tests. All of which returned with negative results.

51.     Ms. Jorgensen continued going to family court for approximately six months. During that period of time, Ms. Jorgensen was not permitted to drive a car with her children. CPS continued to visit tile her home on a monthly basis. Ultimately, the family court case was dismissed and the CPS no longer visited Plaintiff's home.

52.     Thirteen months after the accident, a grand jury was convened and Plaintiff was indicted on several charges, including but not limited to Aggravated Vehicular Homicide, a B felony.

53.     Subsequently, an arraignment date was set up between Plaintiff's criminal attorney, and Defendant SUFFOLK COUNTY DISTRICT ATTORNEYS OFFICE.

54.     Although, an arraignment date was scheduled, the DEFENDANTS decided to physically arrest Plaintiff without informing her attorney. Two detectives, unexpectedly arrived at Plaintiff's home and placed her under arrest. Even after Plaintiff informed Defendants Police Detectives John Doe 1-2 that an arraignment date had been arranged with her attorney, they persisted. As a result, Plaintiff spent the night in jail.

55.     The following day, at the arraignment, bail was set against Plaintiff in the amount of $500,000.00.

56.     After the indictment, Plaintiff's criminal attorney made an appointment to visit the Suffolk County Crime Lab for the purpose of examining the blood evidence. During the visit, the lab produced, for examination, a blood vial containing a few dried red flakes. The vial contained no blood. The absence of blood was questioned.

57.     Plaintiff's criminal attorney was told there was no blood left after they performed

their tests. This prevented any chance of conducting an independent test to verify the validity of the laboratory's test. At the time, Defendants SUFFOLK COUNTY DISTRICT ATTORNEYS OFFICE was not giving any information as to where the blood came from or from what circumstances it was obtained.

58.    A pre- trial hearing was held to determine the admissibility of the blood evidence, during that hearing it was learned, from the Grand Jury transcripts that the toxicologist had untruthfully indicated when she testified the blood Defendants used (hospital blood) contained a preservative, when, in fact, there were  no preservatives or anticoagulants in red top tube blood. Defendant THE SUFFOLK COUNTY DISTRICT ATTORNEY knew this was untrue.

59.    During Plaintiff's first criminal trial, expert witnesses, including hospital employees, testified that centrifuged blood is not whole blood and can never return to its original state.  This is the type of blood that Defendants had taken from Plaintiff.

60.    However, upon information and belief with the knowledge, encouragement and inducement of Defendants the crime lab administrator and technicians testified the blood they received from the hospital was whole blood.

61.    Upon information and belief, acknowledgement of the use of centrifuged blood would have invalidated the procedure used to calculate the toxicology results and would have required the use of methods articulated in Vehicle and Traffic Laws Article 59, resulting in findings well below the impairment level.

62.    Furthermore, Defendants proffered no explanation as to what occurred to the remainder of Plaintiff's blood and why on two milliliters was used when a standard sample was 8-10 milliliters.

63. It was later discovered, that Defendant BAILLARD had instructed a nurse at Stony brook University Hospital to save the remainder of Plaintiff's blood.

64. Plaintiff's daughter's blood samples had traces of ethanol. However Plaintiff's blood was negative for both alcohol and drugs.

65. Robert Ienna, was the crime lab representative who conducted the accident reconstruction. Mr. Ienna falsely testified that there was no data recorder box (black box) in Plaintiff's vehicle. Defendant IENNA testified, that had there been such a device, it would have "saved him many hours of work".

66. Without the "black box", unverified mathematical calculations were used to determine Plaintiff's alleged rate of speed, Ienna falsely testified that Plaintiff was exceeding the speed limit when the accident occurred.

67. A witness from Smithtown Nissan provided testimony that a 'black box" was installed in Plaintiff's vehicle and data from the box would be able to verify many unanswered questions.

68. Upon information and belief, the data recorder box records the speed of the vehicle for thirty (30) seconds before impact. It would also reveal whether or not the vehicle was breaking or not breaking prior to impact.

69. Upon information and belief Defendants did not properly investigate, search for , locate, and or disclose information in the "black box" in Plaintiff's vehicle.

70. Defendants knew or should have known that had they properly investigated, searched for , located, and or disclosed information in the "black box" in Plaintiff's vehicle the incident data recorder would have allowed the jury to know exactly how fast Plaintiff was traveling and other

12

pertinent information about the operation of Plaintiff's vehicle.

71.     During the first trial, the prosecutor tried to create a scenario that Plaintiff was under the influence of alcohol and drugs, when the accident occurred. They tried to mislead the jury to believe that when Plaintiff left the shopping center, Plaintiff returned to Plaintiff's mother's house, in Miller Place. and ingested 3 to 5 drinks. Defendants further falsely theorized that when Plaintiff left her mother's house, Plaintiff got onto Whiskey Road and drove her vehicle, while impaired.

72.     Defendant BAILLARD failed to obtain cell phone tower records or make any effort to verify Plaintiff's whereabouts prior to the accident.

73.     In addition, Defendants failed to interview the witnesses the Plaintiff had contact with prior to the accident. Defendants also neglected to request or review any surveillance camera's from the Michael's Craft Store that Plaintiff visited before the accident.

74.     Any combination of these actions, would have proven to Defendants the inaccuracy of their theory.

75.     A couple of months before Plaintiff's first trial began, Plaintiff's investigator, received permission to check Plaintiff's vehicle at the West Hampton Impound Yard. During his inspection, he was able to locate and photograph the items Plaintiff purchased from the Michael's Store, on the date of accident. He also found eight time stamped Michael's receipts that would later corroborate Plaintiff's being in the Michael's Store within an hour before the accident.

76.     One of the receipts was stamped 13:51 hours or 1:51 pm. The accident took place at approximately 2:50 pm. All the items were located within Plaintiff's vehicle's trunk.

77.     Defendants who had obtained a search warrant for Plaintiff car did not properly investigate, search for, disclose and/or report any of the these findings. Had they done so, it would

13

have proven to Defendants the inaccuracy of their theory.

78.     At Plaintiff's first criminal trial, the Michael's employees who have contact with Ms. Jorgensen that afternoon all testified at her trial, that Plaintiff was not impaired.

79.     The manager from the pizzeria that Ms. Jorgensen visited, also testified at Plaintiff's trial. He too, testified that Plaintiff was not impaired when he spoke to her on May 30, 2008.

80.     Ms. Jorgensen had a painful and difficult pregnancy. She had eight ultrasounds and a level two sonogram.

81.     Ms. Jorgenson also had a pituitary tumor and had been suffering from blackouts and dizziness from a 2004 head injury and had documented treatment from several neurologists and neurosurgeons.

82.     Plaintiff also suffers from severe anemia, requiring her to under go iron infusions. This medical condition, along with the gastric bypass surgery she had in 2007, prevent her from consuming alcohol.

83.     In addition, prior to the accident, there was a master cylinder recall of Plaintiff's vehicle of which Plaintiff was unaware.

84.     However, because Defendants failed to conduct a full and proper investigation into the May 30, 2008 accident, none of these factors were investigated, analyzed and/or disclosed.

85.     Upon information and belief, Defendants DISTRICT ATTORNEYS OFFICE shared and displayed Plaintiff's medical records with the family of the deceased occupants of the other vehicle without the permission of Plaintiff and for no lawful reason in violation of Plaintiff's privacy rights.

86.     Defendants SUFFOLK POLICE and SUFFOLK DA's OFFICE conspired to bring

these false charges and this prosecution against Plaintiff in an attempt to punish her for being involved in a accident with a relatives of a Suffolk County Police Officer.

87.     Defendants engaged in false claims, intentional improper and faulty investigation, what amounts to "junk science" and manipulation of evidence all in an attempt to have Plaintiff suffer for being involved in the unfortunate accident with the family members of a Suffolk County Police Officer.

88.     The Defendants SUFFOLK DA OFFICE, SPOTA,  NEWCOMBE, SUFFOLK POLICE, OFFICERS, DETECTIVES, and BAILLARD worked together to charge, arrest, prosecute and try Plaintiff in an attempt to have her found guilty of crimes she did not commit.

89.     Following a full trial, the jury was unable to make a determination and a mistrial, with a hung jury, was declared.

90.     Rather than dismiss the charges, Defendants and each one of them, have continued the prosecution and rearrested Plaintiff despite her availability and willingness to appear at any time.

91.     The Defendants have stated their intent to have second trial and ahve commenced proceeding to cause that to come about.

92.     The prosecution of the Plaintiff by Defendants is malicious and only aimed to cause Plaintiff harm with no basis or reason for same.

93.     Plaintiff has proclaimed her innocence from committing any crime and the false allegations, manipulation of evidence, misinformation, conspiracy, abuse of authority and abuse of legal process were all intended to harm, damage and injure Plaintiff with no reasonableness in law.

94.     The false arrest, wrongful imprisonment, wrongful detainment and other wrongful acts conducted against the Plaintiff by the Defendants, constituted, abuse of process, abuse of

15

authority, violation of law, violation of police procedures, was lacking probable cause to damage Plaintiff. Such actions were negligent, reckless, unreasonable and unauthorized and Defendants had a duty to save Plaintiff from false arrest, and assaultive behavior, but failed to prevent same and breached their duty and further failed to protect Plaintiff's rights.

95.　As a consequence of Defendants' wrongful actions, negligent behavior and violation of state and federal laws, Plaintiff was deprived of her freedom for an unreasonable period of time, was physically injured and was subjected to great fear, embarrassment, personal humiliation and degradation. All of these rights are secured to Plaintiff by the provisions of the due process clause of Fourteenth Amendments to the Constitution of the United States, as well as the equal protection clause and by 42 U.S.C.§ 1983.

## AS AND FOR COUNT ONE
## 42 U.S.C §1983 - FOURTH, FIFTH, SIXTH and FOURTEENTH AMENDMENTS
## FALSE ARREST

96.　The Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 95 of this Complaint with the same force and effect as though fully set forth herein.

97.　On or about June 2009, Plaintiff, JENNIFER JORGENSEN, was falsely arrested, falsely seized and falsely detained, deprived of her freedom, unlawfully imprisoned and maliciously prosecuted by Defendants COUNTY, SUFFOLK POLICE, BAILLARD and DETECTIVES in violation of the civil and constitutional rights afforded to her via the Fourth Amendment and the Due Process Clauses of the Fifth, Sixth and Fourteenth Amendments of the United States Constitution, as well as 42 U.S.C.§1983. All acts by the Defendants were committed under color of law, thus depriving the Plaintiff of rights secured by federal law and the United States Constitution.

98.     On or about June 2009, Defendants COUNTY, SUFFOLK POLICE, BAILLARD and DETECTIVES, falsely arrested, falsely seized and falsely detained Plaintiff, thus depriving him of his freedom.  Said seizure was made without probable cause, as Defendants were of the knowledge that Plaintiff had committed no crime.

99.     Upon information and belief such seizure, arrest, and detention was ordered and directed by Defendants COUNTY, SUFFOLK POLICE, BAILLARD, DETECTIVES, DISTRICT ATTORNEYS OFFICE, SPOTA and NEWCOMBE actively instigated and encouraged the prosecution of the Plaintiff.

100.    Upon information and belief, the Defendants,  COUNTY, SUFFOLK POLICE, BAILLARD, DETECTIVES,  DISTRICT ATTORNEYS OFFICE, SPOTA and NEWCOMBE possessed, but withheld information which would have exonerated Plaintiff of the criminal charges with which he was charged.

101.    Upon information and belief, the Defendants, COUNTY, SUFFOLK POLICE, BAILLARD, DETECTIVES,  DISTRICT ATTORNEYS OFFICE, SPOTA and NEWCOMBE deprived Plaintiff of the right to offer testimony of witnesses, and to compel their testimony at the Grand Jury Proceeding, thereby depriving Plaintiff of the right to establish a defense.

102.    Upon information and belief, each of the Defendants took an active role in creating and manufacturing the charges against Plaintiff, solely for the purposes of effecting an arrest and conviction, and not to effectuate justice.

103.    As part of the false arrest, detention and accusations, Defendants caused the Plaintiff to be wrongfully seized, falsely detained, falsely arrested, falsely imprisoned, and deprived of her liberty, without probable cause.  Furthermore, as a direct result of said actions, the Plaintiff was

17

unjustly exposed to disgrace, public humiliation, injury and embarrassment.

104.    The Defendants individually and collectively knew at the time of Plaintiff's arrest, and at all times since then, that the evidence they had in connection with the charges brought against Plaintiff were false, inconsistent with and insufficient to establish her guilt with respect to any of the crimes charged.

105.    In arresting, detaining and interrogating Plaintiff, each of the Defendants knew or should have known they were violating federal law and the Plaintiff's constitutional rights set forth herein and had failed to prevent the same and, therefore, acted in concert to harm the Plaintiff.

106.    Defendants withheld information and conspired to cover up the illegal acts delineated herein, despite the truth being apparent. Defendants DISTRICT ATTORNEYS OFFICE, SPOTA and NEWCOMBE offered and were allowed to provide false documents, false statements and perjured testimony before the Suffolk County Grand Jury with the full knowledge and support of COUNTY and SUFFOLK POLICE.

107.    As a direct result of the unlawful actions of each of the Defendants, COUNTY, SUFFOLK POLICE, BAILLARD, DETECTIVES, DISTRICT ATTORNEYS OFFICE, SPOTA and NEWCOMBE , the Plaintiff was wrongfully subjected to grand jury proceedings, wrongfully indicted for vehicular homicide, maliciously prosecuted, forced to endure multiple mandatory court appearances, and face potential incarceration all based upon false premises.

108.    Each of the Defendants, separately and in concert, acted outside the scope of their jurisdiction and without authorization of law and each of the Defendants, separately and in concert acted willfully, knowingly and purposefully with the specific intent to deprive Plaintiff of her right to freedom from illegal seizure of his person, freedom from illegal detention and imprisonment; all

18

rights that are secured to Plaintiff by the Fourth Amendment, the due process clause of the Fifth and Fourteenth Amendments of the United States Constitution, and by 42 U.S.C. §1983.

109.   As a direct and proximate result of the aforesaid acts of the Defendants and each of them, the Plaintiff suffered great physical harm, mental anguish and violation of rights from then until now and she will continue to so suffer in the future having been greatly humiliated and mentally injured, as a result of the foregoing acts of the Defendants.

110.   Plaintiff was forced to incur great expense and special damages to date for the defending the false criminal charges, attorney's fees, investigation expenses, and other expenses in clearing her name against the unfounded and unwarranted allegations by the Defendants which have been a serious burden to Plaintiff.

111.   That by reason of the foregoing, the Plaintiff has been exposed to disgrace, public humiliation and embarrassment and has been damaged in the sum of Ten Million ($10,000,000.00) dollars, including the cost of this action, attorneys fees pursuant 42 U.S.C. §1988, and punitive damages.

## AS AND FOR COUNT TWO
## 42 U.S.C §1983 - FOURTH, FIFTH, SIXTH and FOURTEENTH AMENDMENTS
## MALICIOUS PROSECUTION

112.   The Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 97 of this Complaint with the same force and effect as though fully set forth herein.

113.   Defendants maliciously caused a criminal proceeding to be commenced against Plaintiff without reasonable and probable cause. BAILLARD, DETECTIVES, DISTRICT ATTORNEYS OFFICE, SPOTA, NEWCOMBE actively instigated and encouraged the baseless

prosecution of the Plaintiff on Criminal Possession of a Weapons charges. Plaintiff was indicted based upon BAILLARD, DISTRICT ATTORNEYS OFFICE, SPOTA and NEWCOMBE , malicious and false statements before the Grand Jury. As a result of this baseless prosecution and abuse of process, Plaintiff was falsely detained, wrongfully arrested, maliciously prosecuted along with other wrongful acts conducted. The criminal proceeding was eventually terminated in favor of Plaintiff.

114.    The false detainment, wrongful arrest, malicious prosecution and other wrongful acts conducted against the Plaintiff by the Defendants, BAILLARD, DETECTIVES,  DISTRICT ATTORNEYS OFFICE, SPOTA, NEWCOMBE constituted unreasonable and excessive force by police officers and the district attorney, as well as abuse of process, abuse of authority, breach of police procedures, and violations of the Plaintiff's Fourth, Fifth, Sixth and Fourteenth Amendment rights. The Defendants BAILLARD, DETECTIVES, DISTRICT ATTORNEYS OFFICE, SPOTA, NEWCOMBE negligently and recklessly breached their duty under the United States Constitution to prevent the commission of the civil rights violations perpetrated against JENNIFER JORGENSEN, including violations of 42 U.S.C. § 1983, and substantive and procedural due process infractions.

115.    Said baseless prosecution and abuse of process was continued by the BAILLARD, DETECTIVES, DISTRICT ATTORNEYS OFFICE, SPOTA, NEWCOMBE's refusal to adequately investigate and properly discipline the Defendants COUNTY, SUFFOLK POLICE, BAILLARD, DETECTIVES,  DISTRICT ATTORNEYS OFFICE, SPOTA, NEWCOMBE  for their actions against the Plaintiff JENNIFER JORGENSEN. Specifically, the COUNTY failed to investigate and verify the veracity of the Plaintiff's claims, despite the lack of any significant hearing or

20

consideration by the District Attorney's office for the substantial evidence supporting JENNIFER

JORGENSEN Complaint – such evidence including eye-witnesses, consistent testimony, and the

blatant lack of any probable cause for wrongly detaining, arresting, prosecuting and imprisoning

JENNIFER JORGENSEN

116.     The continued action taken by the Defendants, to prosecute, persecute and fully

inconvenience the Plaintiff JENNIFER JORGENSEN with false criminal charges is an abuse of

process, in that using the courts and judicial process to persecute, intimidate, inconvenience and

further damage the Plaintiff JENNIFER JORGENSEN, despite no significant evidence for

prosecuting the baseless charges of Criminal Possession of a Weapon and Resisting Arrest and a

complete absence of reasonable or probable cause.

117.     As a result of said baseless prosecution and abuse of process, Plaintiff has suffered

continued emotional damage, including prolonged stress and anxiety, fear, and frustration, and has

been harmed monetarily in her incurring of attorney fees, lost business opportunities, and other

expenses incurred in the attempt to clear the Plaintiff JENNIFER JORGENSEN from these false and

maliciously imposed criminal charges.

118.     As a result of said baseless prosecution and abuse of process, Plaintiff was

subjected to a highly substantial and identifiable interference with her person, property and business

based upon his arrest of June 2009 and her unlawful detention. Furthermore, Plaintiff's liberty was

continuously compromised as a result of the continued baseless prosecution of this matter for an

additional ten (10) months and she was subjected to significant burden and humiliation by being the

subject target of an indictment submitted to the Grand Jury by the Defendants in this action.

119.     As a further result of said baseless prosecution and abuse of process, Plaintiff was

forced to incur legal expenses in the tens of thousands of dollars in order to defend herself against these frivolous charges, baseless prosecution and abuse of process.

120.    As a further result of said baseless prosecution and abuse of process, Plaintiff was cause to lose temporary possession of her Nissan vehicle when it was impounded as result of the false arrest, abuse of process and malicious prosecution, and to date has not regained possession of vehicle.

121.    As a further result of said baseless prosecution and abuse of process, Plaintiff suffered a loss of wages from her employment amounting to tens of thousands of dollars.

122.    By reason of the foregoing, Plaintiff has been damaged in the sum of Ten Million ($10,000,000.00) dollars, including the cost of this action, attorneys fees pursuant 42 U.S.C. §1988, and punitive damages.

**AS AND FOR THREE**
**42 U.S.C. § 1983 - ABUSE OF PROCESS and CONSPIRACY**

123.    Plaintiffs repeat and re-allege each and every allegation contained in paragraph 1 through 97 of this Complaint with the same force and effect as though fully set forth herein.

124.    The Defendants, acting under color of state law, both collectively and individually, have engaged in actions and abuses which have deprived Plaintiffs' decedent, of rights, privileges and immunities secured by the United States Constitution, including, but not limited to, rights secured by the Fourth, Fifth, Fourteenth Amendments and other laws in violation of 42 U.S.C. § 1983, constituting a conspiracy because of Plaintiff's alleged involvement in the accident which caused the death of retired Suffolk County Police Officer.

125.    Abuse of process is evidenced by Defendants' refusal, delay, or intentional, deliberate and/or negligent prolonged investigation of the incident surrounding the may 30, 2008

accident.

126.    The Defendants had a duty to conduct a prompt, full and fair investigation of the incident surrounding the May 30, 2008 accident yet the Defendants failed to properly review and conduct an investigation of Defendant Officers, agents, and/or employees of the COUNTY and SUFFOLK POLICE in a timely manner for their unjust and unlawful actions.

127.    Defendant SUFFOLK POLICE failed to investigate Defendants BAILLARD, OFFICERS and DETECTIVES prior to the completion of a full and fair investigation by the appropriate agencies and prior to the presentation of evidence to the Grand Jury.

128.    A lawful criminal process was perverted by Defendants COUNTY, SUFFOLK POLICE, BAILLARD, POLICE OFFICERS, DA's OFFICE, SPOTA, NEWCOMBE, and "JOHN AND JANE DOES 1-10," "DETECTIVES 1-2" in presenting the incident to the Grand Jury nearly thirteen months after its occurrence.

129.    Such actions evidence were done in a manner evidencing malice, gross recklessness, intentional and/or indifference without excuse or justification in violation of 42 U.S.C. § 1983.

130.    As a direct and proximate result Plaintiffs suffered emotional damage and/or distress, including but not limited to prolonged stress and anxiety, fear, humiliation, and frustration.

131.    That by reason of the foregoing, Plaintiffs suffer and continue to suffer irreparable injury and monetary damages in excess of TEN MILLION ($10,000,000.00) DOLLARS, as well as punitive damages, costs and attorneys fees, and any other relief this Court may find just and proper.

23

## AS AND FOR COUNT FOUR
## 42 U.S.C. §1983-MUNICIPAL LIABILITY

132. The Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 87 of this Complaint with the same force and effect as though fully set forth herein.

133. Prior to may 30, 2008 and since, Defendants SUFFOLK AND SUFFOLK POLICE have permitted and tolerated a pattern and practice of unjustified, unreasonable and illegal abuses and arrests of persons by police officers. Despite the egregiously improper conduct, the officers involved were not seriously prosecuted, disciplined or subjected to restraint and such incidents were in fact covered up with official claims that the harassments were justified and proper. As a result, Defendants SUFFOLK POLICE were caused and encouraged to believe that individuals could be falsely arrested, prosecuted and imprisoned under circumstances requiring the use of falsified evidence and testimony, and that such behavior would, in fact, be permitted by the COUNTY.

134. In addition to permitting a pattern of practice of improper treatment of persons, the COUNTY has failed to maintain a proper system for investigation of all incidents of unjustified arrests and prosecution by their agents/employees.

135. The COUNTY has failed to respond to the continuing and urgent need to prevent, restrain and discipline police officers that deprive citizens of their civil rights.

136. A system allegedly maintained by the COUNTY, has failed to properly review unjustified behavior and activities by police officers, and has failed to identify the violative acts by police officers and to subject officers to discipline, closer supervision or restraint to the extent that it has become the custom of the COUNTY to tolerate the improper and illegal arrests and other

wrongful actions by police officers.

137.   Upon information and belief, specific systemic flaws in the COUNTY's police misconduct review process include but are not limited to the following:

a.   Preparing reports regarding investigations of incidents as routine point-by point justification of the police officers' actions regardless of whether such actions are justified;

b.   Police officers investigating incidents systematically fail to credit testimony by non-police officer witnesses and uncritically rely on reports by police officers involved in the incident;

c.   Police officers investigating incidents fail to include in their reports relevant factual information that would tend to contradict the statements of the police officer involved;

d.   Create and manufactured false testimony and evidence.

The foregoing acts, omissions, systemic flaws, policies and customs of the COUNTY caused Suffolk County Police Officers  to believe that improper actions would not be aggressively, honestly and properly investigated with the foreseeable result that officers are most likely to act inappropriately and  falsify evidence in situations where such evidence is neither necessary nor reasonable.

138.   As a direct and proximate result of the aforesaid acts, omissions, systemic flaws, policies and customs of the Defendant COUNTY, the Plaintiff was unjustifiably mistreated, illegally arrested and wrongfully detained, in violation of her civil and constitutional rights.  Moreover, she has suffered and will continue to suffer from psychological harm, humiliation, fear, defamation of character and injury to her reputation.  All of these rights are secured to Plaintiff by the provisions of the Fourth Amendment, the due process clause of the Fifth and Fourteenth Amendments of the Constitution of the United States, as well as 42 U.S.C. §§1981 and 1983.

139.    That by reason of the foregoing, Plaintiff has been exposed to disgrace, public humiliation and embarrassment and has been damaged in the sum of Ten Million ($10,000,000.00) dollars, including the cost of this action, attorneys fees pursuant 42 U.S.C. §1988, and punitive damages.

### AS FOR A FIFTH COUNT

140.    The Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1-97 with the same force and effect as though fully set forth herein.

141.    During all times relevant herein, DEFENDANTS COUNTY, SUFFOLK POLICE, SUFFOLK DA OFFICE, SPOTA and NEWCOMBE and/or their agents, employees, representatives, and other individuals within their immediate control, or supervision, acted with malicious intent, to cause Plaintiffs medical and personal information to be disclosed to persons outside of the those engaged in the law enforcement process and did so intentionally.  Said disclosure was in violation of HIPAA laws and statutes and violated Federal Law and violated Plaintiffs right to privacy as guaranteed by the Constitution and Laws.  Said action was intended and did cause severe emotional distress, and was done  with malice and reckless disregard and indifference to PLAINTIFF'S State and Federally protected rights, while perpetrating extreme and outrageous conduct.

142.    DEFENDANTS COUNTY, SUFFOLK POLICE, SUFFOLK DA OFFICE, SPOTA and NEWCOMBE representations and statements as aforesaid to countless non-parties at suit tended to and did in fact, expose PLAINTIFF to public hatred, embarrassment contempt, ridicule, and disgrace and/or induced an evil opinion of PLAINTIFF in the realm of social intercourse.

143.    As a result of these violations and improper acts, PLAINTIFF suffered harm, to wit, violation of privacy emotional distress, mental anguish, embarrassment, humiliation, inconvenience,

anxiety, and frustration.

144.   Accordingly, PLAINTIFF seeks compensatory and punitive damages, in sum of no less than($10,000,000) Ten-Million Dollars plus costs and  attorneys fee's.

WHEREFORE Plaintiffs demand judgment against Defendants:

a.   on the First Count in the sum of TEN MILLION ($10,000,000.00) DOLLARS.

b.   on the Second Count in the sum of TEN MILLION ($10,000,000.00) DOLLARS.

c.   on the Third Count in the sum of TEN MILLION ($10,000,000.00) DOLLARS.

d.   on the Fourth Count in the sum of TEN MILLION ($10,000,000.00) DOLLARS.

e.   on the Fourth Count in the sum of TEN MILLION ($10,000,000.00) DOLLARS.

f.   on the Fifth Count in the sum of TEN MILLION ($10,000,000.00) DOLLARS.

g.   Punitive damages in the amount of 100 MILLION ($100,000,000) DOLLARS.

h.   Award attorney's fees and costs of this action to the Plaintiffs pursuant to 42 U.S.C. § 1988;

i.   Declaratory Judgment that defendants wilfully violated plaintiffs' rights secured by federal and state law as alleged herein;

j.   Injunctive relief, requiring defendants to correct all past violations of federal and state law as alleged herein; to enjoin defendants from continuing to violate federal and state law as alleged herein; and to order such other injunctive relief as may be appropriate to prevent any future violations of said federal and state laws;

k.   Award such other and further relief as this Court may deem appropriate.

### *A JURY TRIAL IS HEREBY DEMANDED*

Dated: May 27, 2011
  Hempstead, New York

Respectfully submitted,

LAW OFFICES OF
FREDERICK K. BREWINGTON

By: _____
    FREDERICK K. BREWINGTON
    *Attorneys for Plaintiffs*
    556 Peninsula Boulevard
    Hempstead, New York 11550